IN THE TAX COURT OF THE
STATE OF OREGON

The MATH LEARNING CENTER,
an Oregon nonprofit corporation

*v.*

DEPARTMENT OF REVENUE

(TC 3922)

Donald H. Upjohn, Heltzel, Upjohn, Williams & Yandell, P.C., Salem, represented plaintiff.

Joseph P. Dunne, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision for plaintiff rendered December 3, 1996.

**CARL N. BYERS, Judge.**

Plaintiff appeals from the Department of Revenue's (department) Opinion and Order denying plaintiff a property tax exemption for the 1994-95 tax year. Plaintiff contends it

is a scientific and charitable organization whose property is exempt from taxation under ORS 307.130.

## FACTS

The Math Learning Center (MLC) is an Oregon non-profit corporation. Organized in 1976, MLC has no members and is controlled by a self-perpetuating board of directors. The purpose of MLC is to conduct research and to promote new ways of teaching mathematics. It is known for its visual math approach, which uses images and concepts for easy recall by students.

Beginning in 1978, the board began conducting MLC's activities in a business-like manner. MLC established a curriculum development laboratory on the Portland State University (PSU) campus in a cooperative effort between MLC and PSU. Although MLC pays most of the expenses for the laboratory, it derives numerous benefits from the research conducted there, including exclusive copyrights to new teaching materials. The laboratory research explores math concepts and the education process. MLC also develops manipulatives or items such as blocks, strips of paper, and other tangible devices for teaching math concepts. Having developed some visual math concepts and teaching approaches, MLC then established workshops, seminars and courses to explain these new concepts and methods. Pursuant to its agreement with PSU, participants in the workshops are able to receive college credit. MLC also began producing or contracting for the production of manipulatives so these items would be available for the workshops. To assure a timely supply, it developed its own warehouse, packaging and shipping department.

In a relatively short time, MLC has grown into a significant business. For its fiscal year beginning October 1, 1994, and ending September 30, 1995, it had a gross income of over $6,000,000. In 1992, MLC purchased the subject land for $215,000 and, in 1994, erected the subject building for $930,000, all of which was paid for out of cash surplus.

## ISSUES

MLC's appeal raises two issues:

(1) Is MLC a scientific or charitable organization within the meaning of ORS 307.130?

(2) If MLC is a scientific organization, then does it have a charitable objective?

## ANALYSIS

A. *Scientific Organization*

The most relevant definition of a scientific organization is found in an Oregon Supreme Court case commenting on the very statute of concern, ORS 307.130. In *Kappa Gamma Rho v. Marion County*, 130 Or 165, 176, 279 P 555 (1929), the Supreme Court stated:

> "Scientific societies are usually and ordinarily understood to embrace organizations for the promotion of science or the pursuit of scientific studies for the purpose of developing science, rather than as a student in a college or university for his own edification."

There can be little question that mathematics is an area for scientific inquiry. Webster's Third New International Dictionary defines mathematics as "a science that deals with the relationship and symbolism of numbers and magnitudes and that includes quantitative operations and the solution of quantitative problems." *Webster's Third New International Dictionary*, 1393 (1961).

As set forth in its articles of incorporation, MLC's purpose is "[t]o increase the desirability, value and attractiveness of learning mathematics and related subjects, such as science and computing." The articles of incorporation characterize MLC as an "educational corporation."

The court finds that MLC's activities are consistent with the concept of a scientific organization. Through its cooperative effort with PSU, MLC conducts research and scientific inquiries into math concepts and creates the most suitable teaching methods to illustrate those concepts. MLC also conducts workshops, seminars and other activities to convey the results of its investigations and findings to those

who teach mathematics. MLC publishes course guidelines, materials, manipulatives and other teaching aids which it sells and distributes for use by teachers and students. Accordingly, the court finds that MLC is a scientific institution within the meaning of ORS 307.130.

## B. *Charitable Objective*

■   Being a scientific institution, however, is not enough to qualify for an exemption. In *Theatre West of Lincoln City, Ltd. v. Dept. of Rev.*, 319 Or 114, 117, 873 P2d 1083 (1994), the Oregon Supreme Court stated that a literary or scientific institution cannot qualify for an exemption under ORS 307.130 "unless a significant portion of its activities have a charitable objective." Although the court cited *Behnke-Walker v. Multnomah County*, 173 Or 510, 520, 146 P2d 614 (1944) as authority for that statement, the holding in *Behnke-Walker* is much narrower. In that case, the Supreme Court passed on the application of a *for-profit* corporation which conducted a business college. The court held that:

> "the legislature did not intend to exempt from taxation private property used for private profit, and that the only property, public or private, in fact exempted is such as 'has been sequestered or devoted to public uses'" *Id.*, 173 Or at 520 (quoting *Brunswick School v. Greenwich*, 88 Conn. 241, 90 A. 801).

In *Behnke-Walker*, the Supreme Court quoted a Massachusetts case which concluded that use of the words "charitable" and "benevolent" in the same phrase as "scientific" and "literary" requires literary or scientific organizations to be "in the nature of public charities." *Id.* at 519. The underlying rationale for that is that tax exemption is given in return for the performance of functions that benefit the public.

■   Although a scientific organization must be in the nature of a public charity, it is distinguishable from a charitable organization. A charitable organization must have charity as its primary, if not its sole, object. *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 427, 723 P2d 320 (1986). A literary or scientific organization has a different primary purpose.

"If a literary [or scientific] institution had to be a charitable institution, the word 'literary' [or 'scientific'] in the statute would be meaningless. By specifying literary and scientific in addition to charitable, the legislature expressly extended a tax exemption to institutions whose primary purpose is not charitable." *Theatre West of Lincoln City, Ltd. v. Dept. of Rev.*, 12 OTR 479, 482 (1993), *rev'd on other grounds* 319 Or 114, 873 P2d 1083 (1994).

MLC submitted evidence of its charitable or donative activities. Some of those activities include training workshop leaders at MLC's cost, providing tuition waivers for home school instructors and workshop hosts, providing support for teachers on special assignment, and funding minority projects such as teaching programs for Native Americans and teachers from Tanzania. MLC also contributes to the curriculum development laboratory on the PSU campus, to the support of publications by the Oregon Council of Teachers of Mathematics, and a number of other projects. Some of these activities are funded by grants received from the National Science Foundation. For example, most recently, MLC received a three-year National Science Foundation grant of $1,900,000. The great majority of MLC's funding is derived from fees charged for the workshops and seminars and the sale of its teaching materials and teaching aids.

The department contends that MLC's activities are not entirely charitable. The department points out that MLC has a self interest in training workshop leaders and that tuition waivers may be viewed just as marketing devices to increase the market for MLC's products. The department asserts that MLC obtains a *quid pro quo* from PSU and its curriculum development laboratory. Based upon the department's analysis, MLC spends only three to four percent of its gross revenues in a truly donative activity.

These arguments might have some merit if the only basis for MLC's claim for exemption was as a charitable organization. However, this court has determined that MLC is a scientific organization and, therefore, does not have to establish charity as its primary purpose. It is not necessary for MLC to meet the tests set forth in *Methodist Homes, Inc. v. Tax Com.*, 226 Or 298, 309-10, 360 P2d 293 (1961), because

those tests are designed to determine whether the organization operates with charity as its primary object. What the evidence does show, as pointed out by the department's analysis, is that MLC does engage in some truly donative activities. As a scientific organization, MLC's primary objective is applying the scientific method to the subject of mathematics. By sharing the benefits of its investigations with society, it is accomplishing what the legislature intended by the exemption.

From the department's point of view, MLC is a large, successful business that competes to some extent with publishers and manufacturers of math books, teaching aids and related materials. However, there are some significant differences. MLC is not engaged in business to earn a profit for its shareholders. It is nonprofit and has no members or shareholders. Its purpose is to improve the teaching of math and particular math concepts. The only private benefits derived are those by salaried or paid employees. The department has not questioned or challenged the reasonableness of the compensation of any of the MLC employees and the amounts appear reasonable.

None of the founders of MLC receives any private benefit. There is no evidence that any of the officers or employees have any other business or occupation that benefits from MLC activities. Although MLC does not obtain many donations, it has obtained significant grants from the National Science Foundation, which suggests that the government approves of MLC's scientific activities. Further, MLC's activities, particularly those which encourage learning math and the training of teachers who teach math, relieve government of a burden. The court finds that MLC is charitable in nature.

C.  *Exclusive Use*

The subject property is a combination of offices and a warehouse. It contains the main business office of MLC and houses the staff who participate in the development of teaching materials. Once those teaching materials have been developed, a supply is obtained or produced and held in the warehouse so that they may be made available for timely distribution to participants in workshops and others who need

the materials for teaching. Such uses are consistent with MLC's activities and substantially contribute to the accomplishment of its purposes. The court finds that the building and 35 percent of the land is "exclusively" used for MLC purposes and, therefore, qualifies for exemption under ORS 307.130. The parties have stipulated that 65 percent of the land is not being used.

Based on the above, the department's Opinion and Order No. 94-5096 must be set aside. Judgment will be entered directing the appropriate officers to exempt the portions of the subject property as indicated above and refund excess taxes paid, if any. Costs to neither party.