IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

EVERGREEN AVIATION & SPACE )
MUSEUM and THE CAPTAIN MICHAEL )
KING SMITH EDUCATION INSTITUTE, )
)
        Plaintiffs, )   TC-MD 111230D
)
   v. )
)
YAMHILL COUNTY ASSESSOR, )
)
        Defendant. )  **DECISION**

Plaintiffs appeal Defendant's letter dated September 9, 2011, stating that for tax year 2011-12 "85% of the Improvements are Exempt" and "94% of the Land is Exempt" for property identified as Account 523942 (subject property). A trial for the above-entitled matter and four other related cases (TC-MD 111231D, 111240D, 111241D, and 120587D) was held on June 18, 2012. Kevin L. Mannix, Attorney at Law, appeared on behalf of Plaintiffs. Delford M. Smith (Smith), Plaintiffs' founder, Blythe Berselli (Berselli), President of Evergreen Aviation and Space Museum and board member, Larry Wood (Wood), Evergreen Aviation and Space Museum Executive Director, Philip D. Jaeger (Jaeger), Evergreen Aviation and Space Museum Director of Operations, Mary Alice Russell (Russell), McMinnville School District Superintendant, and Janeanne Upp (Upp), High Desert Museum President, Bend, Oregon, testified on behalf of Plaintiffs. Brian A. Linke (Linke), Yamhill County Registered Appraiser III, appeared and testified on behalf of Defendant.

Plaintiffs' Exhibits 1 through 33 and Defendant's Exhibits A through P were admitted without objection.

/ / /

DECISION TC-MD 111230D                                          1

Prior to trial, the parties stipulated that the subject property's land is 100 percent exempt. The parties stipulated that the subject property's area allocated to the wine bar is taxable. The parties dispute the square footage allocated to the wine bar. (Ptfs' Ex 33; Def's Ex D.) The parties stipulated that the subject property's area allocated to the "for profit corporation" for its use as corporate offices is taxable. The parties dispute the square footage allocated to the for profit corporation's use. (Ptfs' Ex 33; Def's Ex D.)

## I. STATEMENT OF FACTS

Smith testified that he founded the Evergreen Aviation & Space Museum, stating Plaintiffs' mission is: (1) To inspire and educate; (2) To promote and preserve aviation and space history; and (3) To honor the patriotic service of our veterans. Smith testified that the continuing goal of Plaintiffs is to "expand their educational program." He described and Russell concurred that a strong business partnership exists between Plaintiffs and the McMinnville School District (District).

A. *Programs*

Russell, who has 32 years of teaching and administrative experience, testified about the numerous programs jointly sponsored by Plaintiffs and the District, including STEM (Science, Technology, Engineering and Math) and ESA (Engineering Space Academy) and their relationship with Chemekata College that gives college credit to high school students who satisfactorily complete the ESA course requirements. Russell testified that "Evergreen Truck Stop" is a program that teaches students "how to fix a vehicle;" "Saturday Academy" operates in conjunction with Chemekata College; "Science of Skateboarding" offered 500 fifth graders the opportunity to "measure time and distance" while skateboarding in the museum; and the "robotics team" is a "spin off" from the ESA program for 30 students. Russell testified that "the

museum complex offers educational programs that are a direct supplement" to the District's educational offerings.

Russell and Wood testified that Plaintiffs' six classrooms located in the Aviation Museum are used for the ESA program in addition to another three classrooms located in the Space Museum. Linke testified that it is his understanding that the three Space Museum classrooms were also available for rent or use as meeting or conference rooms. Wood, a retired military officer (1997) and teacher (2006), testified that he would describe those classrooms as "multi-purpose," estimating that "less than 25 percent of their use is by outside groups," and they are "principally used as classrooms."

Russell testified that the District hires certified teachers for the ESA program and Wood testified that Plaintiffs employ "five certified teachers." Wood testified that Plaintiffs employ a "young man in a van, who travels around the state delivering educational material to classrooms."

Wood testified that Plaintiffs offer scholarships to bring "more children into the buildings." He testified that "discounts" are offered to school groups and fees are waived for those who cannot pay to participate. Wood testified that Plaintiffs work with Boy Scouts and Girl Scouts to offer programs that allow a scout to earn merit badges and one day a month is "home school day" for those children who are home schooled, offering "more toys" than a home school parent could offer. Wood testified that there is an aviation maintenance program and camping is allowed on the grounds. He testified that "Discovery Ambassadors" are trained on Saturdays and Sundays to "learn how the museum works and some individuals are involved in restoring a Cessna 206" with the goal of "getting it to fly again." Wood testified that

/ / /

"restoration" work is performed by a group of volunteers who are supervised by a licensed mechanic.

B. *Campus*

Wood testified about the subject property's "campus" and how the subject property is allocated to different uses. He testified that in the Aviation Museum and the Space Museum there are "café/cafeterias" with "commercial grade kitchens" that serve lunch to students, volunteers (no cost), and Plaintiffs' employees and the facilities are open to the public without paying admission to the museums. (Def's Ex L-R4423-00601, TC-MD 111230D.) Wood described various catered events held on the subject property and the use of the kitchen by Chemekata College's culinary program. Jaeger testified that it is a "known fact" that if food is available "it keeps visitors there and revenue is generated to support" the educational mission of the subject property. Russell testified that the District "is dependent" upon the cafeterias to serve a "healthy hot lunch" to the students.

Wood testified that the "Aviation and Museum Stores" sell items that match the theme of the museum (e.g. Spruce Goose t-shirts) and other items that include "educational" models and "little airplanes," posters, science kits, puzzles, books, CDs, and DVDs. Linke testified that the stores sell "the for profit corporation logo items." (Def's Ex L-R4423-00600, TC-MD 111231D.) Wood testified that individuals can access the stores without paying an admission fee. (Def's Exs J-R4423-00600, TC-MD 111231D; M-R4423-00601, TC-MD 111230D.)

Wood testified that the "IMAX Theatre" shows 45 to 50 minute educational films and Jaeger testified that each of the movies that are shown has an educational message and "teacher's guides" are available for many of the movies. (Ptfs' Ex 29.) Wood and Jaeger testified that the

"admission ticket booth" is also a concession stand, selling popcorn and soft drinks. (Def's Ex O-R4423-00601, TC-MD 111230D.) Wood testified that having popcorn available results in a "more complete experience" for someone attending a movie. In response to questions about ownership and lease arrangements, Berselli and Jaeger testified that Evergreen Vintage Aircraft (the "for profit corporation") purchased the IMAX equipment in 2007. They testified that there is "no written lease agreement" between Plaintiffs and Evergreen Vintage Aircraft and "zero rent" is paid by Plaintiffs for the use of the theatre and equipment. Jaeger testified that the "museum covers annual operating expenses." Linke testified that there is a document titled Agreement for Sublease of IMAX 3D SR Projection System, dated December 29, 2010, stating the "fees" that Plaintiffs will pay to Evergreen Vintage Aircraft for Plaintiffs to operate the IMAX 3D SR Projection System. (Def's Ex H, TC-MD 111241D.) Linke testified that the "theater is exempt" but the "lease does not allow the county to grant an exemption because the rent is not set below market." He testified that "IMAX should not get tax benefit due to tax exempt status of the theater." Plaintiffs allege that the "personal property" should be taxed if the real property is taxed and noted that this is "the first year ever" that Defendant is "taxing" personal property.

Wood testified that the "child's play area" in the Space Museum provides a place for children "to relax and learn by playing." He testified that there is "jungle gym" equipment that simulates helicopter controls. (Def's Ex I-R4423-00600, TC-MD 111231D.) Jaeger described that the equipment as an "aircraft ride, like a carousel, with arms that move up and down when a child pulls back on the yoke."

The parties agree that the subject property's area allocated to the wine bar that is operated by Evergreen Vintage Aircraft, Inc. is taxable. The parties dispute the square footage allocated

to the wine bar. (Def's Ex N-R4423-00601, TC-MD 111230D.) Jaeger testified that the 5,000 square feet reserved for Evergreen Vintage Aircraft, Inc's uses as stated in the Lease Agreement, dated January 1, 2000, was space allocated to the wine bar. (Def's Ex P-5, Sec 2.1, TC-MD 111230D.) Jaeger testified that Plaintiffs allocated no more than 1,120 square feet in the Space Museum and 1,200 square feet in the Aviation Museum for the wine bar. (Ptfs' Ex 33.)

Jaeger testified that two weeks prior to trial he measured the subject property's space allocated to different uses. (Ptfs' Ex 33.) On redirect, Jaeger testified that the area allocated to the Museum café was 300 square feet larger as of the assessment date, January 1, 2011. Linke testified that he measured the outside of the subject property in 2010, "measured the interiors of the Space Museum when it was newly built" and relied on the subject property's blue prints. (Def's Exs D, TC-MD 111230D; C, TC-MD 111231D.) Linke testified that he was "not aware that some offices were used by the museum."

Jaeger testified that the subject property is available for rent and the "venue makes the events," especially for weddings and receptions. He testified that there is "outreach to others to use the facility." Linke questioned whether "special events" further Plaintiffs' "educational and charitable work." (Def's Ex M-R4423-00600, TC-MD 111231D.) He testified that Defendant does not agree with Plaintiffs' "totality concept" that "just because it is associated with education it should be exempt." Linke testified that each "individual component's use" should be considered when determining exemption from property taxation.

C. *Displays*

Wood testified that the subject property is a "living museum" with moveable displays that change on a regular basis. He testified that there needs to be "open spaces" to change

/ / /

displays, especially given the size of the aircraft that are moved from one location to another, inside or outside the buildings. Jaeger testified that the subject property was "designed to grow."

D. *High Desert Museum, Bend, Oregon*

Upp, who for the last four and one-half years has been the president of the High Desert Museum, testified that the High Desert Museum offers an education based program within its 110,000 square foot building and 135 acres. She testified that there are three "changing" galleries. Upp testified that the "Silver Sage Trading Store" sells sketches and is "known for its books." She testified that the museum which is located six miles from Bend has a café that is "for the benefit of the visitor," offering a "place to rest and eat" and allows guests, who she describes as "multi-generational" (e.g., grandparents, parents and children), to "extend their stay." Upp testified that all the money received from the store and café "support the museum" and the museum is "100 percent property tax exempt."

## II. ANALYSIS

"Generally, all property located within Oregon is taxable." *Living Enrichment Center v. Dept. of Rev.*, 19 OTR 324, 328 (2007) (citing ORS 307.030 (2003)). "It has long been the rule in Oregon that property is subject to taxation unless specifically exempted." *Id.* (quoting *Christian Life Fellowship, Inc. v. Dept. of Rev.*, 12 OTR 94, 96 (1991)). Exemption provisions "should be strictly construed in favor of the state and against the taxpayer." *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 94 (2002) (citing *Mult. School of the Bible v. Mult. Co.* (*Mult. School of the Bible*), 218 Or 19, 27, 343 P.2d 893 (1959)). That rule of construction means "strict but reasonable[,]" which "requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *Id.* at 95 (citing *Mult. School of the Bible*, 218 Or at 27-28).

Plaintiffs assert that the subject property with limited exceptions qualifies for exemption from property taxation, because it meets the statutory requirements of ORS 307.130(2)[1] which provides, in pertinent part, that:

> "Upon compliance with ORS 307.162, the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:
>
> "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

ORS 307.130(2).

A. *Benevolent, Charitable or Scientific Institution*

Plaintiffs allege that they are charitable and scientific organizations engaged in charitable and scientific work. The Oregon Supreme Court described scientific organizations in the context of ORS 307.130. The Supreme Court stated:

> "Scientific societies are usually and ordinarily understood to embrace organizations for the promotion of science or the pursuit of scientific studies for the purpose of developing science, rather than as a student in a college or university for his own edification."

*Kappa Gamma Rho v. Marion County*, 130 Or 165, 176, 279 P 555 (1929).

Plaintiffs allege that they qualify as a scientific organization because "[a]eronautics is defined in the Merriam-Webster dictionary as a science dealing with the operation of aircraft" and Plaintiffs' "mission is to inspire and educate the public, and promote and preserve aviation and space history," as evidenced by "the activities which take place at" the subject property. (Ptfs' Trial Mem at 2-3.) Defendant reviewed Plaintiffs' application on the basis that it was a charitable organization and gave no consideration to whether it was a scientific organization.

---

[1] All references to the Oregon Revised Statutes (ORS) are to the 2011 edition unless otherwise stated.

The court finds that Plaintiffs' mission and its activities are consistent with the concept of a scientific organization. Through its partnership with the McMinnville School District and Chemekata College, Plaintiffs offer educational opportunities for scientific inquiries into the operation of aircraft and create interactive learning opportunities to uncover the wonders of space. Plaintiffs create numerous programs staffed by certified educators and licensed professionals, offering scholarships and funding educational events for those who cannot pay the fee. Plaintiffs' programs are designed to promote an interest in aeronautics, to preserve vintage aircraft and to offer a historical perspective that encourages future development and exploration. The court finds that Plaintiffs are a scientific institution within the meaning of ORS 307.130.

"Although a scientific organization must be in the nature of a public charity, it is distinguishable from a charity organization." *Math Learning Center v. Dept. of Rev.* (*Math Learning Center*), 14 OTR 62, 65 (1996). The Oregon Supreme Court has held that, for purposes of ORS 307.130, the words " 'benevolent' used in connection with the word 'charitable' " are synonymous. *Methodist Homes, Inc. v. Tax Com.*, 226 Or 298, 308-309, 360 P.2d 293 (1961) (citing *Behnke-Walker v. Multnomah County*, 173 Or 510, 519, 146 P.2d 614 (1944)). There are, however, some significant differences between charitable and scientific institutions. "Although a scientific organization must be in the nature of a public charity, it is distinguishable from a charitable organization. A charitable organization must have charity as its primary, if not its sole, object. A literary or scientific organization has a different primary purpose." *Math Learning Center* 14 OTR at 65 (1996) (citing *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 427, 723 P.2d 320 (1986)). Notwithstanding the primary purpose of literary or scientific organizations, those types of organizations "must be charitable in nature." *Theatre West of Lincoln City, Ltd. v. Dept. of Rev.*, 12 OTR 479, 482 (1993) *rev'd on*

*other grounds* 319 Or 114, 873 P.2d 1083 (1994). This means that a literary or scientific organization "cannot qualify for the exemption unless a significant portion of its activities have a charitable objective." *Theatre West of Lincoln City, Ltd. v. Dept. of Rev.*, 319 Or 114, 117, 873 P2d 1083 (1994). "The underlying rationale for this is that tax exemption is given in return for the performance of functions that benefit the public." *Math Learning Center,* 14 OTR at 65.

B. *Exclusive Use*

The parties agree that Plaintiffs are organized under Oregon law as a public benefit corporation. The issue before the court is whether the use made of the subject property qualifies for exemption under the statute. Property or a portion of a property shall be exempt from taxation if it is "actually and exclusively occupied or used in the * * * charitable or scientific work carried on by such institutions." ORS 307.130(2)(a).

> "[T]he words 'exclusively occupied or used,' * * * refer to the primary purpose for which the institution was organized and includes any property of the institution used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution."

*Mult. School of Bible*, 218 Or at 36-37. "It is the actual occupancy of the property which determines its right to exemption[.]" *Id*. at 40 (citing *Hibernian Benevolent Society v. Kelly*, 28 Or 173, 42 P 3 (1895)). However, this court has determined that Plaintiffs are scientific organizations and, therefore, Plaintiffs do not have to establish charity as their primary purpose. It is not necessary for Plaintiffs to meet the tests set forth in *Methodist Homes, Inc. v. Tax Com*., 226 Or 298, 309-10, 360 P2d 293 (1961), because those tests are designed to determine whether the organization operates with charity as its primary object. Both parties agree that Plaintiffs do "engage in some truly donative activities." *Math Learning Center* 14 OTR at 67. Plaintiffs are nonprofit entities that provide no benefit for the founder, officers or employees and rely on

volunteers and admission revenue to support their scientific activities. Plaintiffs' partnership with the District supplements or relieves a government burden. The court concludes that Plaintiffs' activities are charitable in nature.

With respect to the exclusive use of the property, ORS 307.130(2)(a) requires that the property be "actually and exclusively occupied or used in the * * * charitable or scientific work carried on by such institutions." The parties agree that the majority of the subject property's square footage is exclusively used for Plaintiffs' charitable and scientific work. The parties disagree as to the total available square footage. (Ptfs' Ex 33; Def's Ex D.) Because Defendant relied on blue prints and Plaintiffs measured the available square footage, the court accepts Plaintiffs' determination that there is 130,000 square feet available for use in the "Aviation Museum" and 56,800 square feet available for use in the Evergreen Theater Building." (Ptfs' Ex 33.) There are some uses and available square feet in dispute.

The parties agree that the subject property's allocation of a portion of its available space to a wine bar is not exempt because it fails to meet the statutory requirements. Plaintiffs state that 1,200 square feet is used for the wine bar. (*Id.*) Defendant concluded that 5,000 square feet should not be exempt, relying on the Lease provision that stated

> "[t]he Premises shall be subject to a reservation for Lessor's use of up to a total of five thousand square feet (5,000 sq. ft.) of space within the building as Lessor may reasonable designate from time to time, that shall be made up of one area of space or multiple areas of space, to be located thirty (30 ft) or more from the Building's primary entrance."

(Def's Ex P at 5.) Plaintiffs' witnesses testified that this provision was made to reserve space for a wine bar. Because the statutory language is based on exclusive use and not space reserved for

/ / /

/ / /

use, the court does not agree with Defendant that 5,000 square feet should be disqualified from exemption. The court accepts Plaintiffs' evidence.

The court agrees with Defendant that the Theater concession area is not used "in the * * * scientific work carried on by" Plaintiffs. ORS 307.130(2)(a). The square footage devoted to this activity was measured by Plaintiffs to be 200 square feet and Defendant's relied on blue prints to estimate an area of 1,707 square feet. (Ptfs' Ex 33; Def's Ex D.) Because Defendant relied on blue prints whereas Plaintiffs measured the area in use, the court accepts Plaintiffs' evidence, showing that 200 square feet is allocated to the concession and is not exempt.

Like the Theater concession area, there is no evidence that the café is used "in the * * * scientific work carried on by" Plaintiffs. ORS 307.130(2)(a). Plaintiffs' witnesses testified that the café provides food to school children, volunteers, employees and paying patrons. Plaintiffs' witnesses testified that "keeping patrons" at the subject property increases revenue that ultimately funds Plaintiffs' scientific work and in this way the café indirectly is used in Plaintiffs' scientific work. The statute requires that the property be "used in the * * * scientific work" with no provision made that the property's use can be to create a financial benefit that in turn funds an organization's scientific work. *Id.* The parties substantially differ in their determination of the café's square footage. (Ptfs' Ex 33; Def's Ex D.) As stated before because Defendant relied on blue prints, the court accepts Plaintiffs' evidence, showing that 3,456 square feet is allocated to the café and is not exempt.

Defendant concluded that because the subject property's gift or museum shop includes among its items available for sale products that bear the logo of a for profit corporation the entire gift shop should not be exempt from property taxation. The court agrees with Defendant that the square footage allocated to the sale of products that do not further Plaintiffs' scientific work

should not be exempt but the court does not agree that the entire gift or museum shop should be denied exemption. Plaintiffs' witnesses testified that the gift or museum shop sells among other products books, CDs, DVDs, science kits and models that are in keeping with its scientific work. Once again the parties vary in their estimate of the square footage allocated to the gift or museum shop. (*Id.*) No evidence was provided to the court as to the actual square footage displaying for profit corporate products. Based on the available evidence, the court concludes that 500 square feet of the gift or museum shop should not be exempt.

Plaintiffs acknowledged that 32,365 square feet is used by "Evergreen Company Operations (Offices)" and is not exempt from property taxation. (Ptfs' Ex 33.) Defendant's estimate of office space that should not be exempt was substantially less that Plaintiffs' admission. (Def's Ex D.) The court accepts Plaintiffs' determination that 32,365 square feet used by the for profit corporation as office space is not exempt.

### III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that Plaintiffs are scientific organizations performing activities that are charitable in nature. Now, therefore,

IT IS THE DECISION OF THIS COURT that for Account 523942 all of Plaintiffs' land is exempt from property taxation.

IT IS FURTHER DECIDED that there is 130,000 square feet available for use in the Aviation Museum and 56,800 square feet available for use in the Evergreen Theater Building.

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that of the subject property's 186,800 square feet, 37,721 square feet of the subject property or approximately 20 percent is not exempt from property taxation.

Dated this ____ day of August 2012.


_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on August 27, 2012. The Court filed and entered this document on August 27, 2012.*