IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

EVERGREEN AVIATION AND SPACE )
MUSEUM and THE CAPTAIN MICHAEL )
KING SMITH EDUCATIONAL )
INSTITUTE, )
            )
          Plaintiffs, )    TC-MD 120587D
            )
      v. )
            )
YAMHILL COUNTY ASSESSOR, )
            )
          Defendant. )    **DECISION**

       Plaintiffs appeal Defendant's denial of its 2011-12 tax year "application for Real and

Personal Property Tax Exemption under ORS 307.130 (Literary, benevolent, charitable,

scientific institutions, volunteer fire department)" for personal property identified as Account

545602.  A trial for the above-entitled matter and four other related cases (TC-MD 111230D,

111231D, 111240D and 111241D) was held on June 18, 2012.  Kevin L. Mannix, Attorney at

Law, appeared on behalf of Plaintiffs.  Delford M. Smith (Smith), Plaintiffs' founder, Blythe

Berselli (Berselli), President of Evergreen Aviation and Space Museum and board member,

Larry Wood (Wood), Evergreen Aviation and Space Museum Executive Director, Philip D.

Jaeger (Jaeger), Evergreen Aviation and Space Museum Director of Operations, Mary Alice

Russell (Russell), McMinnville School District Superintendant, and Janeanne Upp (Upp), High

Desert Museum President, Bend, Oregon, testified on behalf of Plaintiffs.  Brian A. Linke

(Linke), Yamhill County Registered Appraiser III, appeared and testified on behalf of Defendant.

/ / /

/ / /

/ / /

Plaintiffs' Exhibits 1 through 33 and Defendant's Exhibits A through I were admitted without objection.[1]

## I.  STATEMENT OF FACTS

Smith testified that he founded the Evergreen Aviation & Space Museum, stating Plaintiffs' mission is: (1) To inspire and educate; (2) To promote and preserve aviation and space history; and (3) To honor the patriotic service of our veterans.  Smith testified that the continuing goal of Plaintiffs is to "expand their educational program."  He described and Russell concurred that a strong business partnership exists between Plaintiffs and the McMinnville School District (District).

A.  *Programs*

Russell, who has 32 years of teaching and administrative experience, testified about the numerous programs jointly sponsored by Plaintiffs and the District, including STEM (Science, Technology, Engineering and Math) and ESA (Engineering Space Academy) and their relationship with Chemekata College that gives college credit to high school students who satisfactorily complete the ESA course requirements.  Russell testified that "Evergreen Truck Stop" is a program that teaches students "how to fix a vehicle;" "Saturday Academy" operates in conjunction with Chemekata College; "Science of Skateboarding" offered 500 fifth graders the opportunity to "measure time and distance" while skateboarding in the museum; and the "robotics team" is a "spin off" from the ESA program for 30 students.  Russell testified that "the museum complex offers educational programs that are a direct supplement" to the District's educational offerings.

/ / /

---

[1] Defendant's exhibits A through I, submitted for TC-MD No 111241D, were admitted for the above entitled matter.

Russell and Wood testified that Plaintiffs' six classrooms located in the Aviation Museum are used for the ESA program in addition to another three classrooms located in the Space Museum. Linke testified that it is his understanding that the three Space Museum classrooms were also available for rent or use as meeting or conference rooms. Wood, a retired military officer (1997) and teacher (2006), testified that he would describe those classrooms as "multi-purpose," estimating that "less than 25 percent of their use is by outside groups," and they are "principally used as classrooms."

Russell testified that the District hires certified teachers for the ESA program and Wood testified that Plaintiffs employ "five certified teachers." Wood testified that Plaintiffs employ a "young man in a van, who travels around the state delivering educational material to classrooms."

Wood testified that Plaintiffs offer scholarships to bring "more children into the buildings." He testified that "discounts" are offered to school groups and fees are waived for those who cannot pay to participate. Wood testified that Plaintiffs work with Boy Scouts and Girl Scouts to offer programs that allow a scout to earn merit badges and one day a month is "home school day" for those children who are home schooled, offering "more toys" than a home school parent could offer. Wood testified that there is an aviation maintenance program and camping is allowed on the grounds. He testified that "Discovery Ambassadors" are trained on Saturdays and Sundays to "learn how the museum works and some individuals are involved in restoring a Cessna 206" with the goal of "getting it to fly again." Wood testified that "restoration" work is performed by a group of volunteers who are supervised by a licensed mechanic.

/ / /

B. *Campus*

Wood testified about the subject property's "campus" and how the subject property is allocated to different uses. He testified that in the Aviation Museum and the Space Museum there are "café/cafeterias" with "commercial grade kitchens" that serve lunch to students, volunteers (no cost), and Plaintiffs' employees and the facilities are open to the public without paying admission to the museums. (Def's Ex L-R4423-00601, TC-MD 111230D.) Wood described various catered events held on the subject property and the use of the kitchen by Chemekata College's culinary program. Jaeger testified that it is a "known fact" that if food is available "it keeps visitors there and revenue is generated to support" the educational mission of the subject property. Russell testified that the District "is dependent" upon the cafeterias to serve a "healthy hot lunch" to the students.

Wood testified that the "Aviation and Museum Stores" sell items that match the theme of the museum (e.g. Spruce Goose t-shirts) and other items that include "educational" models and "little airplanes," posters, science kits, puzzles, books, CDs, and DVDs. Linke testified that the stores sell "the for profit corporation logo items." (Def's Ex L-R4423-00600, TC-MD 111231D.) Wood testified that individuals can access the stores without paying an admission fee. (Def's Exs J-R4423-00600, TC-MD 111231D; M-R4423-00601, TC-MD 111230D.)

Wood testified that the "IMAX Theatre" shows 45 to 50 minute educational films and Jaeger testified that each of the movies that are shown has an educational message and "teacher's guides" are available for many of the movies. (Ptfs' Ex 29.) Wood and Jaeger testified that the "admission ticket booth" is also a concession stand, selling popcorn and soft drinks. (Def's Ex O-R4423-00601, TC-MD 111230D.) Wood testified that having popcorn available results in a

/ / /

"more complete experience" for someone attending a movie. In response to questions about ownership and lease arrangements, Berselli and Jaeger testified that Evergreen Vintage Aircraft (the "for profit corporation") purchased the IMAX equipment in 2007. They testified that there is "no written lease agreement" between Plaintiffs and Evergreen Vintage Aircraft and "zero rent" is paid by Plaintiffs for the use of the theatre and equipment. Jaeger testified that the "museum covers annual operating expenses." Linke testified that there is a document titled Agreement for Sublease of IMAX 3D SR Projection System, dated December 29, 2010, stating the "fees" that Plaintiffs will pay to Evergreen Vintage Aircraft for Plaintiffs to operate the IMAX 3D SR Projection System. (Def's Ex H, TC-MD 111241D.) Linke testified that the "theater is exempt" but the "lease does not allow the county to grant an exemption because the rent is not set below market." He testified that "IMAX should not get tax benefit due to tax exempt status of the theater." Plaintiffs allege that the "personal property" should be taxed if the real property is taxed and noted that this is "the first year ever" that Defendant is "taxing" personal property.

Wood testified that the "child's play area" in the Space Museum provides a place for children "to relax and learn by playing." He testified that there is "jungle gym" equipment that simulates helicopter controls. (Def's Ex I-R4423-00600, TC-MD 111231D.) Jaeger described that the equipment as an "aircraft ride, like a carousel, with arms that move up and down when a child pulls back on the yoke."

The parties agree that the subject property's area allocated to the wine bar that is operated by Evergreen Vintage Aircraft, Inc. is taxable. The parties dispute the square footage allocated to the wine bar. (Def's Ex N-R4423-00601, TC-MD 111230D.) Jaeger testified that the 5,000 square feet reserved for Evergreen Vintage Aircraft, Inc's uses as stated in the Lease Agreement,

dated January 1, 2000, was space allocated to the wine bar. (Def's Ex P-5, Sec 2.1, TC-MD 111230D.) Jaeger testified that Plaintiffs allocated no more than 1,120 square feet in the Space Museum and 1,200 square feet in the Aviation Museum for the wine bar. (Ptfs' Ex 33.)

Jaeger testified that two weeks prior to trial he measured the subject property's space allocated to different uses. (Ptfs' Ex 33.) On redirect, Jaeger testified that the area allocated to the Museum café was 300 square feet larger as of the assessment date, January 1, 2011. Linke testified that he measured the outside of the subject property in 2010, "measured the interiors of the Space Museum when it was newly built" and relied on the subject property's blue prints. (Def's Exs D, TC-MD 111230D; C, TC-MD 111231D.) Linke testified that he was "not aware that some offices were used by the museum."

Jaeger testified that the subject property is available for rent and the "venue makes the events," especially for weddings and receptions. He testified that there is "outreach to others to use the facility." Linke questioned whether "special events" further Plaintiffs' "educational and charitable work." (Def's Ex M-R4423-00600, TC-MD 111231D.) He testified that Defendant does not agree with Plaintiffs' "totality concept" that "just because it is associated with education it should be exempt." Linke testified that each "individual component's use" should be considered when determining exemption from property taxation.

C. *Displays*

Wood testified that the subject property is a "living museum" with moveable displays that change on a regular basis. He testified that there needs to be "open spaces" to change displays, especially given the size of the aircraft that are moved from one location to another, inside or outside the buildings. Jaeger testified that the subject property was "designed to grow."

/ / /

D. *High Desert Museum, Bend, Oregon*

Upp, who for the last four and one-half years has been the president of the High Desert Museum, testified that the High Desert Museum offers an education based program within its 110,000 square foot building and 135 acres. She testified that there are three "changing" galleries. Upp testified that the "Silver Sage Trading Store" sells sketches and is "known for its books." She testified that the museum which is located six miles from Bend has a café that is "for the benefit of the visitor," offering a "place to rest and eat" and allows guests, who she describes as "multi-generational" (e.g., grandparents, parents and children), to "extend their stay." Upp testified that all the money received from the store and café "support the museum" and the museum is "100 percent property tax exempt."

## II. ANALYSIS

"Generally, all property located within Oregon is taxable." *Living Enrichment Center v. Dept. of Rev.*, 19 OTR 324, 328 (2007) (citing ORS 307.030 (2003)). "It has long been the rule in Oregon that property is subject to taxation unless specifically exempted." *Id*. (quoting *Christian Life Fellowship, Inc. v. Dept. of Rev.*, 12 OTR 94, 96 (1991)). Exemption provisions "should be strictly construed in favor of the state and against the taxpayer." *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 94 (2002) (citing *Mult. School of the Bible v. Mult. Co.* (*Mult. School of the Bible*), 218 Or 19, 27, 343 P.2d 893 (1959)). That rule of construction means "strict but reasonable[,]" which "requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *Id*. at 95 (citing *Mult. School of the Bible*, 218 Or at 27-28).

/ / /

/ / /

Plaintiffs assert that the subject property with limited exceptions qualifies for exemption from property taxation, because it meets the statutory requirements of ORS 307.130(2)[2] which provides, in pertinent part, that:

> "Upon compliance with ORS 307.162, the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:
>
> "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

ORS 307.130(2).

A. *Benevolent, Charitable or Scientific Institution*

Plaintiffs allege that they are charitable and scientific organizations engaged in charitable and scientific work. The Oregon Supreme Court described scientific organizations in the context of ORS 307.130. The Supreme Court stated:

> "Scientific societies are usually and ordinarily understood to embrace organizations for the promotion of science or the pursuit of scientific studies for the purpose of developing science, rather than as a student in a college or university for his own edification."

*Kappa Gamma Rho v. Marion County*, 130 Or 165, 176, 279 P 555 (1929).

Plaintiffs allege that they qualify as a scientific organization because "[a]eronautics is defined in the Merriam-Webster dictionary as a science dealing with the operation of aircraft" and Plaintiffs' "mission is to inspire and educate the public, and promote and preserve aviation and space history," as evidenced by "the activities which take place at" the subject property. (Ptfs' Trial Mem at 2-3.) Defendant reviewed Plaintiffs' application on the basis that it was a charitable organization and gave no consideration to whether it was a scientific organization.

---

[2] All references to the Oregon Revised Statutes (ORS) are to the 2011 edition, all references to the Oregon Administrative Rules (OAR) are to the current version unless otherwise stated.

The court finds that Plaintiffs' mission and its activities are consistent with the concept of a scientific organization. Through its partnership with the McMinnville School District and Chemekata College, Plaintiffs offer educational opportunities for scientific inquiries into the operation of aircraft and create interactive learning opportunities to uncover the wonders of space. Plaintiffs create numerous programs staffed by certified educators and licensed professionals, offering scholarships and funding educational events for those who cannot pay the fee. Plaintiffs' programs are designed to promote an interest in aeronautics, to preserve vintage aircraft and to offer a historical perspective that encourages future development and exploration. The court finds that Plaintiffs are a scientific institution within the meaning of ORS 307.130.

"Although a scientific organization must be in the nature of a public charity, it is distinguishable from a charity organization." *Math Learning Center v. Dept. of Rev.* (*Math Learning Center*), 14 OTR 62, 65 (1996). The Oregon Supreme Court has held that, for purposes of ORS 307.130, the words " 'benevolent' used in connection with the word 'charitable' " are synonymous. *Methodist Homes, Inc. v. Tax Com.*, 226 Or 298, 308-309, 360 P.2d 293 (1961) (citing *Behnke-Walker v. Multnomah County*, 173 Or 510, 519, 146 P.2d 614 (1944)). There are, however, some significant differences between charitable and scientific institutions. "Although a scientific organization must be in the nature of a public charity, it is distinguishable from a charitable organization. A charitable organization must have charity as its primary, if not its sole, object. A literary or scientific organization has a different primary purpose." *Math Learning Center* 14 OTR at 65 (1996) (citing *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 427, 723 P.2d 320 (1986)). Notwithstanding the primary purpose of literary or scientific organizations, those types of organizations "must be charitable in nature." *Theatre West of Lincoln City, Ltd. v. Dept. of Rev.*, 12 OTR 479, 482 (1993) *rev'd on*

*other grounds* 319 Or 114, 873 P.2d 1083 (1994). This means that a literary or scientific organization "cannot qualify for the exemption unless a significant portion of its activities have a charitable objective." *Theatre West of Lincoln City, Ltd. v. Dept. of Rev*., 319 Or 114, 117, 873 P2d 1083 (1994). "The underlying rationale for this is that tax exemption is given in return for the performance of functions that benefit the public." *Math Learning Center,* 14 OTR at 65.

B. *Exclusive Use*

The parties agree that Plaintiffs are organized under Oregon law as a public benefit corporation. The issue before the court is whether the use made of the subject property qualifies for exemption under the statute. Property or a portion of a property shall be exempt from taxation if it is "actually and exclusively occupied or used in the * * * charitable or scientific work carried on by such institutions." ORS 307.130(2)(a).

> "[T]he words 'exclusively occupied or used,' * * * refer to the primary purpose for which the institution was organized and includes any property of the institution used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution."

*Mult. School of Bible*, 218 Or at 36-37. "It is the actual occupancy of the property which determines its right to exemption[.]" *Id*. at 40 (citing *Hibernian Benevolent Society v. Kelly*, 28 Or 173, 42 P 3 (1895)). However, this court has determined that Plaintiffs are scientific organizations and, therefore, Plaintiffs do not have to establish charity as their primary purpose. It is not necessary for Plaintiffs to meet the tests set forth in *Methodist Homes, Inc. v. Tax Com*., 226 Or 298, 309-10, 360 P2d 293 (1961), because those tests are designed to determine whether the organization operates with charity as its primary object. Both parties agree that Plaintiffs do

/ / /

/ / /

"engage in some truly donative activities." *Math Learning Center* 14 OTR at 67. Plaintiffs are nonprofit entities that provide no benefit for the founder, officers or employees and rely on volunteers and admission revenue to support their scientific activities. Plaintiffs' partnership with the District supplements or relieves a government burden. The court concludes that Plaintiffs' activities are charitable in nature.

With respect to the exclusive use of the property, ORS 307.130(2)(a) requires that the property be "actually and exclusively occupied or used in the * * * charitable or scientific work carried on by such institutions." The parties agree that the majority of the subject property's square footage is exclusively used for Plaintiffs' charitable and scientific work. The court concludes that the Theater is exempt from property taxation. At issue is personal property, IMAX projection equipment, located in the Theater.

C. *Personal Property: IMAX Projection Equipment*

Plaintiffs allege that "the IMAX projection equipment is operated under a valid sublease agreement, the rent established in the sublease is below market rent, and the IMAX projection equipment should be exempt from taxation." (Ptfs' Trial Memo at 6.)

Tax exemption of property held under a lease or sublease by an exempt organization are governed by statute:

> "Real or personal property of a taxable owner held under lease, sublease or lease-purchase agreement by an * * * organization * * * granted exemption or the right to claim exemption for any of its property under ORS 307.090, 307.130, 307.136, 307.140, 307.145, or 307.147, is exempt from taxation if:
>
> "(a) The property is used by the lessee * * * in the manner, if any, required by law for the exemption of property owned, leased, subleased or being purchased by it; and

/ / /

/ / /

"(b) It is expressly agreed within the lease * * * that the rent payable by the * * * organization * * * has been established to reflect the savings below market rent resulting from the exemption from taxation."

ORS 307.112(1).

To obtain the exemption under ORS 307.112, the lessee, "must file a claim for exemption with the county assessor." ORS 307.112(2). Plaintiffs filed a claim for Exemption with the Defendant.[3] The sublease between Plaintiffs and Evergreen Vintage Aircraft expressly stated that the "market rent has been reduced by the anticipated tax savings." (Def's Ex H at 1, TC-MD 111241D). Defendant requested "acceptable documentary proof that demonstrates that the amount of rent charged is below market rent." (Def's Ex D at 2, TC-MD 111241D).

"If the assessor is not satisfied that the rent stated in the lease * * * has been established to reflect the savings below market rent resulting from the tax exemption, before the exemption may be granted the lessor *must* provide documentary proof, as specified by rule of the Department of Revenue, that the rent has been established to reflect the savings below market rent resulting from the tax exemption."

ORS 307.112(3) (emphasis added). "The assessor must be satisfied that the amount of rent charged is below market rent. 'Market rent' is defined as the rental income a property would most probably command in the open market and includes an element for property taxes." OAR 150-307.112(5).

OAR 150-307.112(7) states that, "[s]ufficient documentary proof must be submitted at the time of application." Examples of "acceptable documentary proof," are provided in OAR 150-307.112(8), which states:

"(8) Acceptable documentary proof to show the property tax savings is passed on to the lessee may include, but is not limited to the following comparisons:

---

[3] Plaintiffs filed a late personal property tax exemption application on February 29, 2010. (Def's Ex C, TC-MD 111241D) However, Defendant agrees that Plaintiffs' application should be considered timely due to good and sufficient cause that includes "extraordinary circumstances." (Compl at 2.)

"(a) Current rental rate for any portion of that property occupied by nonexempt tenants;

"(b) Historic rental rate data of that property;

"(c) Rental rate used in a real market value appraisal for that property;

"(d) Rent study of comparable or similar properties."

OAR 150-307.112(8). While this list is not exclusive, "[t]he savings must be clearly evident." OAR 150-307.112(9). "Insufficient proof or failure to show the rent is below market rent as described above is grounds for denial of the exemption." *Id*. A statement that the "lessee is responsible for the taxes" is not sufficient proof of a tax savings. ORS 150-307.112(10).

In the case before the court, Plaintiffs responded to Defendant's request for documentation by phone on February 3, 2011, seeking clarification of what Plaintiffs were to submit. (Def's Ex E at 1, TC-MD 111241D.) Defendant responded to Plaintiffs in writing on February 4, 2011, informing Plaintiffs of the documentary proof required of OAR 150-307.112. (*Id*. at 2.) Plaintiffs submitted no evidence of its response to Defendant's written request.

The court finds that Plaintiffs did not comply with the statutory requirements of the property tax exemption statute, and that Defendant's denial of Plaintiff's application for tax exemption for the IMAX projector was within their statutory authority. Plaintiffs filed an application for tax exemption for the IMAX projector; however, when prompted by Defendant, Plaintiffs failed to provide acceptable documentary proof of below market rent, as required by ORS 307.112 and OAR 150-307.112. There is no evidence that Plaintiffs pay any rent for the use of the IMAX projection equipment.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiffs failed to carry its burden of proof and did not submit any evidence other than the

language of the lease in support of their allegation that "the rent established in the sublease is below market rent." (Ptfs' Trial Memo at 6.). Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied and the IMAX projection equipment identified as Account 545602 is taxable personal property for tax year 2011-12.

Dated this ___ day of August 2012.

JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on August 27, 2012. The Court filed and entered this document on August 27, 2012.*