NATIVE FOREST COUNCIL
and Timothy G. Hermach,
*Plaintiffs,*

*v.*

LANE COUNTY ASSESSOR,
*Defendant.*

(TC-MD 001065E)

A telephone trial was held April 25, 2001.

Timothy G. Hermach, Plaintiff and Director for Native Forest Council, argued the cause *pro se*.

Joyce Kehoe, Exemptions Specialist, Lane County Assessor, argued the cause for Defendant.

Decision for Defendant rendered September 28, 2001.

**COYREEN R. WEIDNER, Magistrate.**

Plaintiffs appeal Defendant's denial of their application for a property tax exemption for the 1999-2000 tax year.[1] Defendant denied Plaintiffs' application for two reasons. First, Defendant claimed Native Forest Council's (NFC) lease was not fully executed as of July 1, 1999. On January 24, 2001, the court entered a Partial Decision wherein it concluded Defendant's denial for this reason was invalid. The holding in that Partial Decision is included herein by reference. The second reason Defendant denied Plaintiffs' application was that Defendant concluded NFC was not a charitable organization under ORS 307.130.[2] Trial on this second issue was held April 25, 2001. Timothy G. Hermach, Director for NFC, appeared on behalf of Plaintiffs. Joyce Kehoe appeared and testified on behalf of Defendant. For ease of reference herein, the parties are referred to as "NFC" and "the county."

## I.  STATEMENT OF FACTS

The subject property is a three-bedroom home located in Eugene that is used by NFC as its headquarters. NFC is a nonprofit organization under 26 USC section 501(c)(3) (hereafter referred to as 501(c)(3) organization) that leases the subject property. One person lives at the residence to provide security and maintenance. The rest of the home is devoted to use by NFC. It has a library and several computers. Approximately 50 to 100 people visit the property each year to use the library.

NFC's Articles of Incorporation, which were filed June 23, 1988, provide that its purpose is "The Preservation, Conservation, and Regeneration of our nation's remaining old-growth, native American Forests." The Bylaws describe the purpose and objective of the organization as follows:

---

[1] The property is identified in Defendant's records as Account 0437085.

[2] All references to the Oregon Revised Statutes (ORS) are to 1999.

"The fundamental objective of the Council shall be educational in nature and shall be essentially concerned with the preservation and protection of public forests which still remain in their native or untouched state throughout the nation. An additional objective shall be the restoration of such native forests in areas of the country where they no longer exist.

"An additional objective shall be to foster the commercial production of timber on privately owned forest lands."

Hermach testified that one of NFC's primary goals is to establish a zero-cut policy for forests on public lands. It has lobbied Congress in this area and has attempted to educate the public as to the benefits of protecting public forests. NFC has a membership of approximately 2,500 individuals and organizations. A "standard member" pays annual dues of $35.[3] Members wanting to contribute more to the organization may do so and be given standing as a "supporter," "international member," "contributor," "conservator," or "benefactor." The category of membership is based on the amount of the contribution. Membership entitles an individual or organization to a quarterly newspaper circulated by NFC entitled *Forest Voice*. The newspaper details current events at NFC and its efforts to eliminate logging on public lands and further educates the readers as to the impact of logging and other activities in the nation's forests. Hermach testified that NFC circulates approximately 15,000 to 25,000 newspapers each quarter. As a result, many newspapers are given to people who are not paid members.

Hermach further testified that NFC provides speakers to schools, rotary clubs, chambers of commerce, and other local organizations to educate them as to the consequences of cutting old trees. He explained its goal is to educate people and get them "informed and energized" about protecting and preserving the nation's forests.

NFC has occupied and leased the subject property for approximately 10 years. In late 1999, the property's owner advised NFC it may qualify for a property tax exemption based on it being a charitable organization. NFC then

---

[3] This was the rate during spring 2000.

filed a late application with the county under the provisions of ORS 307.162(2). The county subsequently denied the application. The issue raised in this appeal is whether NFC qualifies for a charitable exemption under Oregon's property tax exemption statutes.

## II.  ANALYSIS

The burden of proving entitlement to an exemption is on a taxpayer. In analyzing exemption cases, the court is guided by the principle that taxation is the rule and exemption from taxation is the exception. *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 426-27, 723 P2d 320 (1986). Courts are to provide exemption statutes with a strict, yet reasonable construction to achieve the legislature's intent. *SW Oregon Pub. Def. Services v. Dept. of Rev.*, 312 Or 82, 88-89, 817 P2d 1292 (1991).

ORS 307.112 provides a property tax exemption for property owned by a taxable owner yet leased to an exempt entity. ORS 307.112 provides, in pertinent part:

"(1)   Real or personal property of a taxable owner held under lease * * * by an institution, organization or public body, other than the State of Oregon, granted exemption or the right to claim exemption for any of its property under ORS * * * 307.130 * * * is exempt from taxation if:

"(a)   The property is used by the lessee in the manner, if any, required by law for the exemption of property owned or being purchased by it; and

"(b)   It is expressly agreed within the lease * * * that the rent payable by the institution, organization or public body has been established to reflect the savings below market rent resulting from the exemption from taxation."

For the property to be exempt, NFC must be entitled to claim an exemption under ORS 307.130 and it must be using the property in a qualifying manner.[4] The county

---

[4] Another requirement is that the lease contain a savings clause wherein the lease payment is established to reflect the savings below market rent. ORS 307.112(1)(b). The county did not claim the savings clause was invalid in this lease. The court would note that the rent currently payable is a market rent. The lease provides that, if exemption is granted, then the rent would be reduced accordingly.

claims NFC is not a charitable organization under the provisions of ORS 307.130. ORS 307.130 provides, in pertinent part:

> "(1)   Upon compliance with ORS 307.162, the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

> "(a)   * * * only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

■   The Department of Revenue has promulgated standards, incorporating prior case decisions, that are to be used when determining whether a property qualifies for a charitable exemption. As a first step, the organization itself must be organized as a nonprofit corporation. OAR 150-307.130-(A)(1)(b). NFC is a nonprofit 501(c)(3) organization. Hermach claims NFC's status as a 501(c)(3) organization qualifies it as a charity for purposes of exemption. However, the rule is clear that a corporation's status as a 501(c)(3) organization does not, in itself, qualify a property for exemption. As noted in the rule:

> "[T]he status of an institution as a nonprofit corporation does not conclusively endow it with the attributes of a charity. For example, an organization is recognized by the Internal Revenue Service as income tax exempt within IRC (1954) Section 501(c)(3). However, the standards for determining whether the income of an organization is subject to federal income taxes and the question of whether property is exempt from property taxes are separate and distinct. Thus, whether a corporation is a charity is to be determined not only from its charter, but also from the manner in which it conducts its activities."

*Id.*

---

Hermach testified the owner of the property advised him that, if the property became exempt, he would simply sign the refund check over to NFC. For reasons to follow, the court will not rule on whether the savings provision within the subject lease is adequate.

■        Upon reviewing the rule, it is the court's opinion NFC meets the **organizational** requirements for a charitable organization. It is incorporated as a nonprofit organization, it accounts separately for funds committed to charitable use, it is operated for the private advantage of its members, and the Articles of Incorporation provide that, upon dissolution, its assets should go to the Wilderness Society in Washington D.C. Although it may meet the organizational requirements of a charitable organization, NFC's **purpose and activities** must also qualify as charitable. OAR 150-307.130-(A)(3).

In *SW Oregon Pub. Def. Services*, 312 Or at 89, the Oregon Supreme Court set forth three requirements for an exempt charitable institution:

> "[T]here are three elements to qualifying as a 'charitable institution' under ORS 307.130: (1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving."

As detailed above, the primary object of NFC is the preservation of the nation's forests. The question is whether that object is charitable. In *Archdiocese of Portland v. Dept. of Rev.*, 5 OTR 111, 120 (1972), the Tax Court noted that " 'whatever is gratuitously done or given in relief of the public burdens or for the advancement of the public good is a public charity.' " (Citation omitted.) Failure to relieve a public burden, however, does not disqualify an organization from exemption. It is simply a factor to be considered. *See* OAR 150-307.130-(A)(3)(c). NFC claims educating others about the importance of preserving the nation's forests is advancing the public good.

■        After evaluating the evidence and applicable law, it is the court's conclusion charity is not NFC's primary object. NFC was organized to promote a political ideology by educating the public. That ideology may have its benefits but it is **not** charitable. Educating the public on a particular point of view is not providing charity. Charity must be more direct and substantive to the recipient. NFC is promoting an idea,

*i.e.*, preserving the forests, but it is the lawmakers who ultimately decide whether preservation is to be granted. NFC is not directly providing the preservation to the public at large. Again, NFC's goal and purposes may be admirable, but they are not charitable. Ultimately, NFC's primary object and the manner in which it operates is to educate.

■       The court further finds that the element of gift or giving is lacking. Hermach testified that the gift provided by NFC is the protection and preservation of the nation's soil and forests. He argued this gift is given to the public generally for both now and in the future. However, the gift provided must have a "tangible reality" to the recipient. *See* OAR 150-307.130-(A)(3)(d). Again, NFC is promoting its ideology of what is best for the nation's forests. That has no tangible reality to the recipients. It is true that NFC does circulate, free of charge, to many individuals and organizations copies of its newspaper. The court finds this element and degree of giving is insufficient given the organization's primary object is educational rather than charitable.

## III.   CONCLUSION

After evaluating all the evidence, it is the court's conclusion that, although NFC meets the organizational requirements for a charitable organization, its purpose and activities are not charitable as intended by the exemption statutes. Consequently, NFC does not qualify for a property tax exemption. Now, therefore,

IT IS THE DECISION OF THIS COURT that the county's denial of NFC's 1999-2000 application for exemption for the property identified as Account 0437085 is affirmed.